UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

INTERNATIONAL CHEMICAL CORPORATION
d/ba/ INNOVATIVE CHEMICAL CORPORATION,
JAMES TIMLIN, and WOODRIDGE SPECIALTY
PRODUCTS CORP.,

                Plaintiffs,
v.                                           **DECISION AND ORDER**
                                                       09-CV-359S
NAUTILUS INSURANCE COMPANY,

                Defendant.

## I. INTRODUCTION

Plaintiffs, International Chemical Corp. d/b/a Innovative Chemical Corp. ("ICC"), James Timlin, and Woodridge Speciality Products Corp. ("Woodridge"), commenced this suit in New York State Supreme Court, County of Erie on March 11, 2009. (Docket No. 1.)[1] Defendant, Nautilus Insurance Co. ("Nautilus"), with whom ICC had contracted to provide "litigation insurance," removed the action to this Court on April 16, 2009 on diversity grounds. ICC seeks a declaration that Nautilus was required to furnish them a defense, which it refused to do, in an underlying action in the United States District Court for the Northern District of Illinois.[2] Each party presently seeks summary judgment as to their

---

[1] Although this action technically consists of three plaintiffs, all parties are associated with ICC. James Timlin was the owner/chief executive officer of ICC. Woodridge was alleged to have had the same ownership and management as ICC. Further, it was alleged that they engaged in the same activities as ICC. Therefore, all the plaintiffs will be treated collectively as "ICC." See Medallion Prods., Inc. v. McAlister, No. 6 C 2597, 2008 WL 5046055 (N.D. Ill. Nov. 20, 2008).

[2] Plaintiffs brought this action on March 11, 2009, almost four months after they had been awarded summary judgment in the underlying case on November 20, 2008. However, in their Complaint they state that the underlying action has not yet been resolved. (Complaint, ¶ 28; Docket No. 1-2.) Both parties' submissions treat the underling case as current and on-going even though it appears that it was then and is now closed. See Medallion Prods., 2008 WL 5046055 at *20 (granting summary judgment to ICC and Timlin on all counts where Woodridge had already been dropped from the case). Despite this apparent discrepancy and the confusion generated from it, this Court will adjudicate the merits of Plaintiff's claim because the outcome of the underlying case does not affect the merits of Plaintiff's claim here.

rights and obligations under the insurance contract. (Docket Nos. 8, 17.)

## II. BACKGROUND

**A.     Underlying Case**

The facts of this case correspond to the facts of the underlying action, Medallion Products, Inc. v. McAlister, No. 6 C 2597, 2008 WL 5046055 (N.D. Ill. Nov. 20, 2008), in which Plaintiffs in this action were defendants. Because the facts and allegations of the complaint in that case determine Nautilus' duty to furnish a defense, those allegations will be recited below in abbreviated form.

Medallion Products Inc. ("Medallion") is a business that designs and markets consumer products through televison infomercials. (Medallion Products, Inc. v. McAlister Fourth Amended Complaint, ¶ 5; docketed in this case at number 8-7.)[3] Sometime in 2004 at the request of William McAlister, Medallion created a urine removal product aimed at eliminating pet stains and odors.  (Id. ¶ 22.) The product is allegedly a proprietary formulation that contains a chemical which, with the help of a blacklight, allows viewers to see it remove stains. (Id. ¶ 24.) McAlister and Medallion eventually entered into a contract whereby Medallion would serve as the sole manufacturer and McAlister as sole distributor of the product. (Id. ¶¶ 33-36.) Thereafter, they worked together to develop a television infomercial praising the effectiveness of the product and demonstrating its capabilities. (Id.

---

[3]The first amended complaint in the underlying action was filed on May 11, 2006 and alleged a cause of action against ICC for civil conspiracy. (Godson Affidavit, Exhibit A, ¶¶ 115-123; Docket No. 8.) The second amended complaint was filed on June 30, 2006 and contained causes of action against ICC for misappropriation of proprietary images and conspiracy.(Godson Affidavit, Exhibit B, ¶¶ 114-119.) The third amended complaint was filed on April 10, 2007 and named ICC and Woodridge as defendants. (Godson Affidavit, Exhibit C.) The fourth amended complaint was filed on March 27, 2008. (Godson Affidavit, Exhibit D.) It named ICC as a defendant but dropped Woodridge. (Id.) In reciting the facts, this Court will rely on the fourth amended complaint because it undisputedly contained the most detailed factual allegations and the most causes of action.

¶¶ 33, 43-50.) Medallion also played a role in developing the labeling for the new product. (Id. ¶ 42(b).)

Despite Medallion honoring its end of the agreement, McAlister eventually breached the agreement by conspiring with ICC to create a "knock-off" of the Medallion product. (Id. ¶¶ 69, 71.) McAlister provided ICC with a copy of a laboratory report that identified Medallion as the manufacturer of the product, a bottle of the product with labeling, samples of the Medallion solution, and access to the television commercial. (Id. ¶¶ 71-72.) At all times, ICC allegedly knew that McAlister had another supplier but still agreed to develop a similar product. (Id. ¶ 74.)

On June 7, 2005, ICC represented to McAlister that it had reverse engineered the Medallion formulation and that its product was even better than the original. (Id. ¶ 75.) But, in fact, according to Medallion the ICC product contained no special enzyme found in Medallion's product and, unlike the original, it did not make the urine glow under blacklight. (Id. ¶ 95.)

Later, using a template provided by McAlister, ICC created a new label and added the "AS SEEN ON TV" emblem. (Id. ¶ 77) Further, ICC approved a label listing ingredients that it knew its product did not contain. (Id. ¶¶ 78, 80.) In sum, according to Medallion, ICC created a deficient knock-off product and falsely represented to McAlister that it could act as a substitute for the Medallion product. (Id. ¶¶ 97-98.) Medallion alleges that this substitute ICC product was eventually sold fraudulently in place of its product. (Id. ¶¶ 107, 120.)

B.     **Insurance Agreement**

Relevant to this action is a portion of ICC's insurance policy that provides coverage

for "personal and advertising injury." It reads in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Insurance Policy[4]; Docket No. 1-3.)

It defines personal and adverting injury as "the use of another's advertising idea in your 'advertisement'; or [i]nfringing upon another's copyright, trade dress, or slogan in your advertisement." (Id.) Trade dress is defined as "the total appearance and image of a product, including features such as size, texture, shape, color or color combinations, graphics and particular advertising and/or marketing techniques used to promote its sale." (Id.)

It further defines advertisement as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Id.)

The policy excludes acts "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (Id.)

### III.  DISCUSSION

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant

---

[4] The policy is not paginated.

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When the parties cross-move for summary judgment, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't,

Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

Summary judgment in favor of an insurer is appropriate when the allegations raised in a complaint for which coverage is sought fall entirely within a policy exclusion. Brooklyn Law Sch. v. Aetna Cas. And Sur. Co., 849 F.2d 788, 789 (2d. Cir. 1988).

### B.  Choice of Law[5]

Although neither party has briefed this issue and they both cite substantive caselaw from courts throughout the country, choice-of-law is the first issue a federal court must address in a diversity case. A federal court applies the choice-of-law rules of the state in which it sits to determine which law to apply to the case. Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). In New York, "the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied." R.E. Turner, Inc. v. Conn. Indem. Co., 925 F. Supp. 139, 144 (W.D.N.Y.1996). In cases involving insurance contracts, New York courts "traditionally resolved choice of law issues . . . by applying the law of the state which the parties understood would be the principal location of the risk." Snyder v. Nat'l Union Fire Ins. Co., 688 F. Supp. 932, 934-35 (S.D.N.Y.1988); see also Cunninghame v. Equitable Life Assur. Soc. of U.S., 652 F.2d 306, 308 (2d Cir. 1981) ("If . . . the contract does not have a choice-of-law provision, then the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law."). Therefore, because the insured party resides in New York and because this Court lacks any further information, New York law should be applied to this action. No other state has any apparent interest in the litigation beyond the fact that

---

[5]Neither party brings a choice-of-law provision in the contract to this Court's attention.

one of the parties is a citizen of that state. In such a situation, New York, the forum state, has the most significant contacts and greatest interest in this litigation. See <u>Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.</u>, 189 F .3d 208, 214 (2d Cir.1999); <u>Morgan Stanley Group, Inc. v. New England Ins. Co.</u>, 36 F. Supp. 2d 605, 606 (S.D.N.Y.1999).

**C.    Duty to Defend**

The duty to defend insureds – long recognized as broader than that to indemnify – is derived from the allegations of the complaint and the terms of the policy. See <u>Technicon Elec. Corp. v. Am. Home Assur. Co.</u>, 74 N.Y.2d 66, 73, 542 N.E.2d 1048, 544 N.Y.S.2d 531 (1989).  If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend. <u>Ruder & Finn v. Seaboard Sur. Co.</u>, 52 N.Y.2d 663, 669–70, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). When an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in *toto*, are subject to no other interpretation." <u>Int'l Paper Co. v. Cont'l Cas. Co.</u>, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974); <u>Technicon Elec. Corp.</u>, 74 N.Y.2d at 73. Further, the language in the exclusion clause must be "clear and unmistakable." <u>Seaboard Sur. Co. v Gillette Co.</u>, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984).

Policyholders are entitled to be defended even if the underlying action is frivolous or rests on debatable theories. <u>Int'l Paper Co.</u>, 35 N.Y.2d at 326-27. However, it is the facts of the case, not conclusory allegations, that the court looks to in making its decision. <u>Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. AARPO, Inc.</u>, No. 97 Civ. 1438(JSM), 1999 WL 14010, at *3 (S.D.N.Y. Jan. 14, 1999); <u>Allstate Ins. Co. v. Mugavero</u>, 79 N.Y.2d 153, 162,

581 N.Y.S.2d 142, 589 N.E.2d 365 (1992); Pa. Millers Mut. Ins. Co. v. Rigo, 256 A.D.2d 769, 770-71, 681 N.Y.S.2d 414 (N.Y. App. Div. 1998); Willard v. Preferred Mut. Ins. Co., 242 A.D.2d 960, 961, 662 N.Y.S.2d 342, 343 (N.Y. App. Div. 1997) ("In determining whether a policy exclusion applies, the facts alleged in the complaint, rather than the conclusory assertions found therein, are controlling.").

### D.     Motions for Summary Judgment

ICC argues that it was sued in the underlying action for inflicting advertising injury on Medallion. Specifically, it claims that since the alleged fraudulent product, which it manufactured, was sold in the marketplace under Medallion's "trade dress" and advertised in an infomercial, it is being accused of "advertising injury." It moves this Court for a declaration that Nautilus owed them a defense in that action pursuant to their contract.

Nautilus argues, *inter alia*, that it had no duty to provide coverage because Medallion's complaint in the underlying action alleges only that ICC engaged in intentional conduct, which is excluded under the policy.

This Court agrees. Having undertaken a independent study of each of the four relevant complaints in that action[6], it becomes evident that Medallion sought to hold ICC liable exclusively for intentional conduct. Medallion alleges that McAlister provided ICC with Medallion's product and labeling and asked it to create a knock-off product. It alleges that ICC "knew at the time that [McAlister] had another supplier who was making the product" and that "despite that knowledge ICC agreed to develop a product for sale to [McAlister] . . . to be sold at retail." (Fourth Amended Complaint, ¶¶ 73, 74.) It further alleges that "all

---

[6]There are actually 8 complaints in total, seven amended and one original. However, only four implicate ICC.

defendants participated in or ratified the crucial decision to include on both the retail label and packaging the banner headline 'AS SEEN ON TV,'" which Medallion alleges caused confusion with its own product in the marketplace. (Id. ¶ 84.) It adds that all Defendants "knew it was false." (Id. 85.) In short, every allegation against ICC accuses it of knowing and intentional conduct. By the "clear and unmistakable" terms of the policy, such action is excluded from coverage: "This insurance does not apply to . . . advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." (Id.) Thus, Nautilus had no duty to defend. See Seaboard Surety Co. v. Gillette Co., 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) (duty to defend absent when the allegations are "solely and entirely within the policy exclusions").

Plaintiffs argue that this provision does not apply because there are causes of action that could be sustained against them that do not require intentional conduct. But this argument fails for two reasons. First, this Court must look to the facts alleged, not the causes of action brought. See National Union Fire Ins. Co., 1999 WL 14010 at *3 ("Based upon the facts alleged in the complaint, the [insurance] policy does not cover the conduct alleged against the . . . plaintiffs.") Here, as already noted, all the facts accuse ICC of intentional conduct. In fact, each of the causes of action alleged against ICC in the fourth amended complaint – tortious interference with contract, tortious interference with prospective economic advantage, and conspiracy – require intentional conduct.

Second, while an insured is required to provide a defense if there is any reasonable probability that the facts alleged could support a covered claim, see Cont'l Cas. Co., v. Rapid-Am. Corp., 80 N.Y.2d 640, 649, 593 N.Y.S.2d 966, 609 N.E.2d 966 (1993), no such

9

reasonable probability exists on the face of this complaint. Instead, it unequivocally accuses ICC of intentional and knowing conduct. ICC's argument that a hypothetical cause of action could be brought, alleging a violation of New York General Business Law, does not change this analysis – this Court must look only to the "the four corners of the complaint," which clearly do not suggest a "reasonable possibility of coverage." See id.; see also Brooklyn Law Sch., 849 F.2d at 790 ("We can see no reason why the court should have imagined what is not in the complaint in order to find liability which was not intended.") Consequently, Defendant's motion is granted and Plaintiffs' motion is denied.[7]

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment, seeking a declaration that it was not required to defend Plaintiffs in the underlying action, is granted. For the same reasons, Plaintiffs' motion is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED.

---

[7]This Court relies on the exclusion clause because it clearly absolves Nautilus of any duty to defend. That is not to imply, however, that Nautilus would have a duty otherwise. For example, the coverage only applies to the insured's advertisement, but the underlying complaint does not allege that ICC played any role in any advertisement. ICC was simply the supplier of a product, it did not "publish[] or broadcast to the general public." ICC cites no binding caselaw in support of its contention that its mislabeling or fraudulent labeling could be considered an advertisement. Instead it relies on an abrogated case from Michigan, a case from the Southern District of Florida where the complaint specifically alleged that the insured conducted advertising, and a New York case that does not even consider insurance coverage. See Citizens Ins. Co. v. Pro-Seal, 710 N.W.2d 547 (Mich. App. 2005); Adolfo House Distrib. Corp. v. Travelers Property & Cas. Ins. Co.,165 F. Supp. 2d 1332 (S.D. Fla. 2001); Maritime Fish Prods, Inc., World-Wide Fish Prods. Inc., 100 A.D.2d 81, 474 N.Y.S.2d 281 (N.Y. App. Div. 1984). While it does cite Seaboard Surety Co. v Gillette Co., 64 N.Y.2d 304 for the proposition that a manufacturer can be held liable for an advertising agency's television commercial, the insurance provision in that contract provided coverage for "any invasion of rights of privacy committed or alleged to have been committed in any advertisement." Id. at 309. This is unlike the provision at issue here, which provides coverage only for "*your* advertisement," not "*any* advertisement." Moreover, the advertising agency and the insured were in privity by operation of a contract where the agency would develop commercials on behalf of the insured. No such relationship exits here.

10

FURTHER, that Plaintiffs' Motion for Summary Judgment (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.


Dated:     December 30, 2011
           Buffalo, New York


                                                      <u>/s/William M. Skretny</u>
                                                   WILLIAM M. SKRETNY
                                                          Chief Judge
                                           United States District Court